UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AON CORP. WAGE & HOUR | ) | |
| EMPLOYMENT PRACTICES | ) | 08 C 5802 |
| LITIGATION | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the court on two motions. The first is the motion of Plaintiffs Angela J. Piersanti and Joyce Cooper for class certification pursuant to Fed. R. Civ. P. 23. The second is the motion of Plaintiffs Denise Mariette Miller, Maurice Craig, Janet Holmes, and Wendy Caesar for conditional collective action certification as well as an order authorizing notice pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). For the reasons stated below, we grant both motions.

## BACKGROUND

Defendant AON Corporation and its related entities (collectively "AON") provide insurance brokerage services. AON acts as an intermediary between insurance companies and its clients (businesses seeking insurance coverage) to secure a policy that fulfills the needs of the client. As part of its brokerage business, AON created a division known as Aon Client Services ("ACS") to provide transactional and administrative services to AON's clients quickly and efficiently.

AON organized ACS into several subgroups. Employees in the Client Services Unit ("CSU") were assigned to particular client accounts and were responsible for the timely fulfillment of a variety of service requests for those accounts. Among the services CSU employees shepherded to completion were preparing automobile ID cards and invoices as well as issuing insurance certificates. Policy Maintenance Unit ("PMU") employees reviewed the language of policies to ensure they complied with terms previously agreed to by the client and examined premiums to determine whether they were calculated accurately. Each PMU employee was assigned to a separate group that only performed one of the following tasks: policy checks, audit analyses, and retroactive analyses. Policy checks involved reviewing a client's policy documents from an insurance carrier to ensure that the coverage described in the policy was consistent with the previously negotiated terms. Audit analyses verified the insurance company's calculation of premiums charged to the client to ensure that proper factors were considered and that the information employed was correct. Retroactive analyses examined an insurer's annual adjustment of certain portions of a given policy to determine whether the retroactive adjustment reflected the terms agreed to by the client and the carrier.

CSU and PMU staff were placed into three levels: Associate Specialist, Client Specialist, and Senior Client Specialist. Associate Specialists were generally less

experienced and received lower salaries than Client Specialists, who in turn were less experienced and received lower salaries than Senior Client Specialists. The complexity and volume of an employee's client accounts would increase as one progressed from one classification to another. Despite the differing classifications, the primary job responsibilities of each level of specialist in both the PMU and CSU were essentially the same.

Plaintiff Angela J. Piersanti ("Piersanti") worked in the Glenview, Illinois, office of CSU from 2005 to 2007. Piersanti was hired in November 2005 and initially worked as an Associate Client Specialist before her promotion to Client Specialist in July 2007. Piersanti worked for clients in various industries and was responsible for servicing more than 50 accounts. Piersanti had little direct contact with her clients. Among other tasks, Piersanti's duties included processing certificate and auto identification requests, renewal policy review, and processing invoices. Piersanti completed the majority of her client requests pursuant to detailed instructions and workflows provided by AON. Occasionally, however, she would conclude that she could not fulfill a client request and would have to determine whether to consult a supervisor or the client in order to rectify the problem. Piersanti once filled in for a Senior Client Specialist at the Glenview CSU and performed that person's activities without difficulty.

- 3 -

Plaintiff Joyce Cooper ("Cooper") also worked as a Client Specialist at Glenview from July 2007 to December 2008. Cooper's responsibilities included processing certificates, handling renewals, and preparing auto identification cards. Cooper received most of her tasks from AON's computer systems, though occasionally she would be assigned rush certificates by her supervisor. Cooper's job also required her to interact with a company called Genpact, a document production company based overseas. Cooper would have to answer Genpact's questions regarding the preparation of certificates and invoices to ensure that they were prepared according to the client's wishes.

Plaintiff Denise Mariette Miller ("Miller") worked in the New York CSU from 2004 until she was transferred to the Glenview CSU in 2007.[1] Miller worked as both an Associate Client Specialist and Client Specialist but maintains that her job duties were the same in both positions; indeed, Miller alleges that employees at all levels at PMU performed the same baseline functions. In New York, Miller worked on the construction unit processing service requests for multiple certificates and directing them for review. Miller later became personally responsible for managing requests from around 35

---

[1] Miller also worked in the New York PMU as an Associate Client Specialist, Client Specialist, and Senior Client Specialist from 2001 until April 2004. Miller worked on policy checks, audits, endorsements, cancellations, and mailing of policies. Miller states that PMU workers at all levels perform the same baseline functions.

construction accounts and interacted with a number of departments to ensure that outputs (certificates, etc.) were timely completed for her clients. To process a client deliverable, such as a certificate of insurance, Miller followed a set of written workflow instructions generated by AON management. After her construction accounts were transferred to another CSU, Miller was assigned a number of marine accounts. The marine accounts were larger than her former construction accounts and had multiple lines of insurance. Miller often had to create individual non-standard certificates outside the regular computer system for her marine clients.

Plaintiff Maurice Craig ("Craig") worked in the PMU in New York as a Senior Client Specialist from 2001 to 2006. Craig's only responsibility at the New York PMU was reviewing policy binders to ensure they complied with the terms of the policies previously agreed to by the insured and the carrier. In performing a policy review, Craig consulted detailed checklists, flowcharts, and templates prepared by AON. If Craig encountered a service problem or question about a policy, he would inquire with an AON Relation Manager, other departments, or his supervisors so that a deeper review could be undertaken.

Plaintiff Wendy Caesar ("Caesar") worked for the New York PMU from 2002 until 2007. Caesar began working for the New York PMU in January 2002 as a Client Specialist until her promotion to Senior Client Specialist in April 2004. Caesar worked

- 5 -

for the audit and retroactive analysis unit of the New York PMU. As a Senior Client Specialist, Caesar trained new employees, monitored the activities of new employees, and assigned work to Client Specialists in her unit. Caesar dealt directly with carriers and insureds in conducting her audits and resolving disputes that arose during those audits.

Plaintiff Janet Holmes worked in the New York PMU from December 2001 through April 2007 as a Client Specialist in the audit and retroactive analysis unit. Holmes worked with client accounts of various sizes in different industries that possessed policies of various levels of complexity. Unlike Caesar, Holmes did not train other employees.

Plaintiffs allege that AON violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §§ 105/1-/12, by failing to pay Plaintiffs overtime compensation. Both FLSA and IMWL require employers to compensate their employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours a week. 29 U.S.C. § 207(a)(1); 820 ILCS § 105/4a(1). However, administrative employees are exempt from the overtime pay requirements of FLSA and IMWL. 29 U.S.C. § 213(a)(1); 820 ILCS § 105/4a(2)(E) (referring to FLSA and accompanying regulations to define administrative employee). AON classified all Associate Specialists, Client Specialists, and Senior

- 6 -

Client Specialists in both the CSU and PMU as administrative employees and therefore did not pay them overtime compensation. Plaintiffs argue that AON improperly classified these categories of employees as administrative.

Plaintiffs filed two separate actions (consolidated here) in which former CSU and PMU employees in Illinois and New York seek damages from AON for alleged deprivations of overtime pay as a result of AON improperly classifying Plaintiffs as administrative employees. On April 4, 2008, Plaintiffs Piersanti and Cooper ("Illinois Plaintiffs") filed suit against Aon Risk Services, Inc., alleging they were improperly classified as administrative employees and denied overtime pay in violation of FLSA, 29 U.S.C. § 216(b), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §§ 105/1-12, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1-15. The Illinois Plaintiffs also seek to represent a class of individuals with potential claims under IMWL only. The proposed class consists of all current and former employees of AON during the statutory period who worked as Senior Client Specialists, Client Specialists, and/or Associate Specialists in AON's Illinois Aon Client Services division, Client Services Unit, who worked at least one hour of overtime and were not given overtime compensation in alleged violation of IMWL ("Illinois CSU Class").

On May 15, 2008, Plaintiffs Miller, Craig, Holmes, and Caesar ("New York Plaintiffs") filed suit against Aon Risk Services Northeast, Inc. and AON Corporation,

asserting they were incorrectly classified as administrative employees and denied overtime wages in violation of FLSA and various provisions of New York law. In addition to their individual claims, the New York Plaintiffs seek conditional certification of collective actions for two groups. Miller seeks to represent a class consisting of all former employees of AON during the statutory period who were Senior Client Specialists, Client Specialists, and/or Associate Specialists in AON's New York Aon Client Services division, Client Services Unit who worked at least one hour of overtime but were not paid overtime wages in alleged violation of FLSA ("New York CSU Class"). Plaintiffs Craig, Holmes, and Caesar seek to represent a class including all former employees of AON during the statutory period who were Senior Client Specialists, Client Specialists, and/or Associate Specialists in AON's New York Aon Client Services division, Policy Maintenance Unit who worked at least one hour of overtime and were not paid overtime compensation in alleged violation of FLSA ("New York PMU Class").

The Illinois Plaintiffs now move for class certification pursuant to Fed. R. Civ. P. 23. The New York Plaintiffs seek conditional certification of the two collective actions described above and authorization of notice for their proposed class pursuant to FLSA, 29 U.S.C. § 216(b).

## LEGAL STANDARDS

### I.     Class Action Certification Under Rule 23

To obtain certification of a class action pursuant to Rule 23, a claim must first satisfy four criteria: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). The first two focus on the characteristics of the class as a whole: the number of potential class members must be so large that joinder would be impracticable, and legal or factual questions presented in the putative class action must be common to all class members. Fed. R. Civ. P. 23(a)(1)(2). The third and fourth criteria concentrate on the attributes of the parties seeking to represent the class: the claims or defenses of the representatives must be of the same type as those of the class they seek to represent, and the representatives must be able to protect the interests of the class fairly and adequately. Fed. R. Civ. P. 23(a)(3)(4).

If an action shows each of these four attributes, the inquiry shifts to examine whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(b)(3) specifies that a class can be certified if the common factual or legal questions identified for purposes of Rule 23(a)(2) predominate over issues that pertain only to individual class members and if adjudicating the controversy as a class action would be superior to other possible

methods. The party who seeks class certification bears the burden of showing that the Rule 23 requirements are satisfied. *Amchem*, 521 U.S. at 614.

## II.    Collective Action Certification Under FLSA

Section 16(b) of FLSA permits plaintiffs to bring a collective action against an employer for unpaid minimum wages or overtime compensation. 29 U.S.C. § 216(b). A collective action under § 216(b) differs from a class action under Federal Rule of Civil Procedure 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under § 216(b) only if they opt in to the action by providing their written consent. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Neither § 216(b) nor its regulations set forth criteria for courts to employ in deciding whether employees are situated similarly such that conditional class certification is appropriate. Though the Seventh Circuit has not articulated a standard to regulate the provision of notice to putative FLSA claimants, courts in other circuits have employed an inquiry that occurs at two points in the litigation. *See, e.g., Anderson v. Cagle's Inc.*, 488 F.3d 945, 951-54 (11th Cir. 2007); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (upholding lower court's use of two-step inquiry). At the first stage, the court leniently reviews pleadings and affidavits to determine whether there are allegations sufficient for the court to find that the representative plaintiff and putative class members are similarly situated. *Hipp v.*

*Liberty National Life Ins.*, 252 F.3d 1208, 1218 (11th Cir. 2001). Named plaintiffs can satisfy their burden at this first stage by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (internal quotation marks omitted).

The second stage occurs later in the litigation, after all or a significant portion of discovery has been completed and the defendant has filed a motion for decertification. *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). The second stage analysis requires the court to employ a much stricter standard in making a final determination on the similarly situated question considering a number of factors including the disparate factual and employment settings of the individuals plaintiffs and the defenses available to defendants that are individual to each plaintiff. *See id.; Thiessen*, 267 F.3d at 1103.

## DISCUSSION

### I.     Illinois CSU Class

The Illinois Plaintiffs seek to certify a class consisting of all current and former employees of AON who were Senior Client Specialists, Client Specialists, or Associate Specialists in AON's CSU in Glenview, Illinois who worked at least one hour of overtime and who were not paid overtime compensation.

- 11 -

A. *Rule 23(a) Factors*

1. Numerosity

To satisfy the numerosity requirement, the number of putative class members must be sufficiently large to make joinder of all members impracticable. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). During discovery AON determined that approximately 515 current and former AON employees fall within the proposed class definition. Though many of the putative class members will likely hail from Illinois, the joinder of hundreds of individuals (even from the same state) would nevertheless complicate the advance of proceedings. Therefore, the Illinois CSU Class is sufficiently numerous to render joinder impracticable, thus satisfying Fed. R. Civ. P. 23(a)(1).

2. Commonality

Where injuries alleged by a class are the result of a standardized course of conduct by a defendant, the class members' claims will usually present at least some common facts and common legal questions. *Keele*, 149 F.3d at 594. At least one common question of law or fact is required before commonality may be satisfied. *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). The Illinois Plaintiffs contend that AON engaged in a uniform course of conduct in classifying the members of the Illinois CSU Class as administrative workers exempt from the overtime provisions of IMWL. The central common question of law that arises from AON's

- 12 -

classification is whether the class members were properly classified as administrative workers under IMWL. This common question of law is sufficient to fulfill the commonality requirement of Fed. R. Civ. P. 23(b).

3.    Typicality

The typicality requirement of Fed. R. Civ. P. 23(a) is satisfied if the same course of conduct that produced the named plaintiff's claim produced the claims of the class and the same legal theory is advanced as to both. *De La Fuente v. Stokely-Van Camp, Inc.* 713 F.2d 225, 232 (7th Cir. 1983). This factor connects the two factors of commonality and adequacy of representation by ensuring that the claims litigated by the class representative will involve the same factual and legal arguments that pertain to the class as a whole and that the resolution of the representative's claims will in turn address the claims of the group. *Id.; see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997).

The Illinois Plaintiffs claim that AON violated IMWL by improperly classifying them as administrative employees exempt from overtime requirements. The claims of the Illinois CSU Class arise out of the same act of classification and the putative class members assert a similar violation of IMWL. The Illinois Plaintiffs' claims are therefore typical of those of the Illinois CSU class because the course of conduct that produced

them also produced the claims of the class, and the Illinois Plaintiffs advance the same IMWL claim that will be asserted by the class.

4.    Adequacy

Adequacy requires the named plaintiff and class counsel to adequately represent the interests of other class members and the adequacy of class counsel. *Ret. Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). A named plaintiff must have the same interests and have incurred the same legal injury as the class members in order to serve as an adequate class representative. *Uhl*, 309 F.3d 978, 985 (7th Cir. 2002). The Illinois Plaintiffs have suffered the same alleged injury under the IMWL as the members of the Illinois CSU Class. In addition, the Illinois Plaintiffs have diligently pursued their interests in this litigation for nearly two years.

Fed. R. Civ. P. 23(g) provides four factors that a court must consider to determine whether counsel can adequately represent the class and merits appointment to serve as class counsel. As applied to this matter, those factors are the work that counsel has done with respect to the potential class claims, experience in handling class actions, counsel's knowledge of the IMWL and related statutes, and the resources that counsel will devote to the representation of the class. Counsel has performed a substantial amount of work during the pendency of this action including extensive efforts in completing necessary discovery. Counsel also has experience in class actions and presently represents a

- 14 -

number of similar classes in cases across the country involving similar questions of labor and employment law. Submissions filed to date demonstrate an in-depth knowledge of the IMWL and related statutes. Finally, counsel has committed to devoting adequate human and financial resources to properly represent the class.

We therefore find that the Illinois Plaintiffs and their counsel will adequately protect the interests of the Illinois CSU Class.

B.     *Predominance and Superiority Under Rule 23(b)(3)*

Having determined the Illinois Plaintiffs meet the requirements of Rule 23(a), we now proceed to examining whether the proposed action can be maintained under one of the subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. The Illinois Plaintiffs maintain that this class falls within Rule 23(b)(3), which provides that a class action can be maintained if common questions predominate over those specific to individual class members and class treatment is a superior method of adjudication. The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Though the predominance factor is related to the Rule 23(a)(2) commonality factor, the predominance factor is "far more demanding" than the commonality requirement of Rule 23(a). *Id*. at 623-24. While commonality looks to whether class members share factual or legal issues, the predominance inquiry examines whether the shared attributes will be a main focus of the litigation. *See id*.

AON contends that the Illinois Plaintiffs have not satisfied the predominance requirement because an individualized assessment of the daily work of each member of the class will be required to determine whether AON properly classified the members of the Illinois CSU Class as administrative employees. As an initial matter, the criteria used to determine whether employees can be classified as administrative workers do not require an individualized employee-by-employee inquiry.[2] To qualify for the administrative exemption, an employee's primary duty (1) must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (2) must include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(2)-(3) (2010). The use of the term "primary duty" implies that the applicability of the administrative exception focuses on the core work functions of the employees at issue and does not require a detailed individualized inquiry as to the day-to-day tasks performed.

The Illinois Plaintiffs have presented evidence to show that the central tasks of Illinois CSU Class members were sufficiently uniform to determine the propriety of

---

[2] Illinois law provides that the standards used to determine if the administrative exemption to IMWL's overtime provisions applies are the same as those employed in the FLSA context. 820 ILCS § 105/4a(2)(E). We therefore use the definitions supplied by FLSA and accompanying provisions of the Code of Federal Regulations in discussing the administrative exemption criteria. *See* 29 C.F.R. §§ 541.200-202.

their administrative classification on a collective basis. For example, Piersanti worked in the Illinois CSU as both an Associate Client Specialist and Client Specialist and filled in for a Senior Client Specialist who went on leave. Based on her experience at all three levels, Piersanti stated that the tasks performed by each level of employee were substantially the same. Piersanti and Cooper also stated that they performed similar tasks while at AON's Illinois CSU such as preparing insurance certificates and auto identification cards. Though the class members may not have performed the same tasks, the Illinois Plaintiffs' statements regarding the accomplishment of virtually every assignment by all Illinois CSU employees pursuant to standardized checklists supports a conclusion that employees completed a variety of tasks in a consistent manner such that their status under the IMWL can be considered on a collective basis.

AON highlights a number of differences among the tasks performed by the Illinois Plaintiffs as well as potential Illinois CSU Class member Denise Mariette Miller[3] in support of their argument that the situations of the class members diverge too widely to assess their classification collectively. For example, AON presented evidence that Miller, Piersanti, and Cooper worked with clients in different industries. AON also pointed out that Cooper and Miller had more direct client contact than Piersanti. The

---

[3] Miller transferred from the New York CSU to the Illinois CSU in April 2007 and worked there until her resignation in May 2008.

variations identified by AON relate more to peripheral aspects of the jobs of Illinois CSU Class members than to the core of their functions. Defendants evidence does not show that the essential job functions of the Illinois CSU Class members were sufficiently divergent such that individualized analyses of each employee's duties will overpower the central legal issue of the case: whether AON properly classified, as a group, the class members as administrative employees exempt from overtime provisions of IMWL. Class treatment, with its attendant consistency and efficiency, is a superior method of resolving this controversy. As a result, all of the requirements of Rule 23 are satisfied, and certification is appropriate for the Illinois CSU Class.

## II.     New York PMU and CSU FLSA Collective Actions

The New York Plaintiffs seek conditional certification of two collective actions. Miller seeks to represent a class consisting of all former employees of AON during the statutory period who were Senior Client Specialists, Client Specialists, and/or Associate Specialists in AON's New York CSU who worked at least one hour of overtime but were not paid overtime wages. Plaintiffs Craig, Holmes, and Caesar seek to represent a class including all former employees of AON during the statutory period who were Senior Client Specialists, Client Specialists, and/or Associate Specialists in AON's New York PMU who worked at least one hour of overtime and were not paid overtime compensation.

The parties disagree as to which stage of the FLSA certification inquiry applies. AON contends that the second stage inquiry should apply because the parties have engaged in extensive document and deposition discovery, thereby allowing us to make a definitive conclusion as to the appropriateness of collective treatment for the proposed classes. In spite of the fact that some discovery has been undertaken, we believe that a slightly modified version of the first stage analysis is appropriate for two reasons. First, we are not convinced that the evidence presented by the New York Plaintiffs is representative of what they could bring to bear if given the opportunity to perform additional discovery. The parties' agreed-upon discovery schedule supports our conclusion: the scheduling contemplates a two-step approach to the conditional certification process indicating that the New York Plaintiffs intended to provide more evidence on the similarly situated question after additional discovery is performed and additional plaintiffs opt in to the action. *See Gieske v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1167 (D. Kan. 2006) (declining to skip FLSA first step inquiry when parties' discovery schedule indicated two distinct stages of analysis). We hesitate to make a final determination as to the appropriateness of collective treatment without providing New York Plaintiffs with the opportunity to present a more complete evidentiary picture.

Additionally, proceeding to the second step framework before potential plaintiffs receive notice and an opportunity to opt in to the actions at issue would result in prejudice to these individuals. *See id.*, *Leuthold v. Destination Am., Inc.* 224 F.R.D. 462, 468 (N.D. Cal. 2004). AON will not suffer prejudice as a result of adhering to the traditional two-pronged certification procedure. Should AON decide to move for decertification of the collective actions at issue after discovery is completed and the period for opting in has expired we will assess the validity of the proposed collective action under more rigorous criteria. We therefore assess each of the New York Plaintiffs' proposed collective actions according using the standards employed at the first stage of the FLSA certification inquiry.

A.      *New York PMU Collective Action*

In support of their motion for conditional certification, the New York Plaintiffs have submitted the declaration of Plaintiff Maurice Craig who worked in the New York PMU as a Senior Client Specialist. Though Craig's duties were limited to performing policy reviews, Craig alleges that he had the capability to do all other functions performed by New York PMU employees because all tasks were done pursuant to standardized AON checklists and flow charts. AON challenges Craig's description of uniformity among New York PMU jobs. In support of its contentions, AON presents deposition testimony from other New York PMU employees who focused on different

types of tasks as evidence that differences among the putative collective action members prevent a court from making a preliminary finding that Craig is similarly situated to the potential members. Though the depositions cited by AON demonstrate that Craig's job was not identical to those performed by other New York PMU employees, Craig's declaration is sufficient to show that enough uniformity exists between himself and the putative collective action members with regard to the AON-produced processes used to perform their jobs. This uniformity, when considered with other allegations that he and the other New York PMU employees were improperly classified as administrative employees, regularly worked in excess of forty hours a week, and were not compensated for overtime are enough for us to make a preliminary determination that Craig and others at the New York PMU were subject to a common policy in violation of FLSA. *See Flores*, 289 F. Supp. 2d at 1045. We therefore authorize Craig to distribute notice to members of his putative collective action pursuant to 29 U.S.C. § 216(b).

B.    *New York CSU Collective Action*

In support of conditional certification, New York Plaintiffs submit the declaration of Denise Miller who worked in New York CSU as a Client Specialist and Senior Client Specialist. Miller's allegations state that she and all other New York CSU employees performed essentially the same jobs, regularly worked in excess of forty hours a week, were improperly classified as administrative employees, and did not receive

compensation for overtime. AON contests Miller's description of employment in the New York CSU by highlighting unique aspects of Miller's duties that cuts against a preliminary finding that Miller and the putative collective action members are similarly situated. AON's citation to portions of Miller's testimony does not detract from the substance of Miller's allegations that New York CSU employees generally performed the same type of work using a uniform process established by AON. Miller's allegations are sufficient to support a preliminary finding that she and the members of the New York CSU Collective Action are subject to a common policy in violation of FLSA. We therefore authorize Miller to distribute notice to members of her putative collective action pursuant to 29 U.S.C. § 216(b).

C.    *Form of Notice*

Though the parties do not discuss the form of the proposed notice for the collective actions at issue, we will nevertheless review the notice submitted by the New York Plaintiffs to determine its propriety. Though § 216(b) lacks a provision requiring court-ordered notice of the action, district courts can authorize, in appropriate cases, the issuance of notice to potential plaintiffs in FLSA actions. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Though AON makes no objections to the form of the proposed notice and we find no significant problems, one potential point of confusion merits mention. The section referring to the class definition refers to the

highest level of seniority in the New York PMU and CSU as "Senior Claims Specialist" while the named plaintiffs' declarations and AON's briefs all refer to persons with this position as Senior Client Specialists. The New York Plaintiffs should determine the appropriate name for this position before distributing notice to the putative collective action members.

## CONCLUSION

We grant the motion of Plaintiffs Piersanti and Cooper for certification pursuant to Fed. R. Civ. P. 23 of a class consisting of all current and former employees of AON during the statutory period who worked as Senior Client Specialists, Client Specialists, and/or Associate Specialists in AON's Illinois Aon Client Services division, Client Services Unit, who worked at least one hour of overtime and were not given overtime compensation in alleged violation of Illinois Minimum Wage Law. The motion of the New York Plaintiffs to conditionally certify and authorize notice for both the New York PMU Collective Action and the New York CSU Collective Action pursuant to 29 U.S.C. § 216(b) is also granted. We approve the form of the notice submitted other than the changes provided in this opinion.

Charles P. Kocoras

Charles P. Kocoras
United States District Judge

Dated:     April 8, 2010