**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| | ) |
| | ) |
| | )    Case No. 08 CV 5802 |
| **AON CORP. WAGE & HOUR** | ) |
| **EMPLOYMENT PRACTICES** | )    Honorable Judge Charles P. Kocoras |
| **LITIGATION** | ) |
| | )    Magistrate Judge Susan E. Cox |
| | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT GRANTING AN ORDER PERMITTING
THEM TO CALCULATE OVERTIME DAMAGES UNDER A "TIME AND ONE
HALF" METHODOLOGY AND IN OPPOSITION TO DEFENDANT'S PARTIAL
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......... iii

INTRODUCTORY STATEMENT ......... 1

ARGUMENT ......... 2

**POINT I**

AON HAS THE BURDEN OF PROOF ON THE
FLUCTUATING WORK WEEK EXEMPTION ......... 2

**POINT II**

THE FLUCTUATING WORK WEEK STANDARD ......... 3

**POINT III**

AUTHORITY CITED BY AON IS DISTINGUISHABLE AND FLAWED ......... 5

**POINT IV**

THE PARTIES LACK THE CLEAR MUTUAL
UNDERSTANDING REQUIRED BY *MISSEL* ......... 8

A.   Proof of Clear Understanding ......... 9

B.   The Evidence Demonstrates That Plaintiffs and Members of
     The Class Received a Flat Salary ......... 12

**POINT V**

*URNIKUS* IS PLAINLY AT VARIANCE WITH THE
LEGISLATIVE POLICY OF THE FLSA AS A WHOLE ......... 16

CONCLUSION ......... 21

## TABLE OF AUTHORITIES

**Federal Cases**

A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945) 3, 18

Ackerman v. Coca-Cola Enters., Inc., 179 F.3d 1260, 1262-63 (10th Cir.1999) 4

Adams, et al. v. Dep't of Juvenile Justice, et al., 143 F.3d 61, 67 (2d Cir.1998) 11

Andrus v. Charlestone Stone Products Co., 436 U.S. 604, 611 20

Barrentine, 450 U.S. 728 [1981] 19

Brown v. Nipper AutoParts Supplies, Inc., 2009 WL 1437836 8

Burgess v. Catawba County, 805 F.Supp. 341, 348 (W.D.N.C. 1992) 4

Clements, 530 F.3d 1224, 1231 (10th Cir. 2008) 19

Cowan v. Treetop Enters., 163 F.Supp.2d 930, 941 (M.D.Tenn.2001) 6, 8

Davis v. Friendly Express, Inc., 2003 WL 21488682, at *1 (11th Cir.2003) 14

Desmond v. PNGI Charles Town Gaming, LLC, 661 F.Supp.2d 573, 579-85 (N.D.W.Va.2009) 6

Dingwall v. Friedman, 3 F.Supp.2d 215, 221 (N.D.N.Y. 1998) 4, 12

Flood v. New Hanover County, 125 F.3d 249, 252 (4th Cir.1997) 5

Griffin v. Wake County, 142 F.3d 712 at 715 5, 12

Highlander v. K.F.C. Nat'l Management Co., 805 F.2d 644, 648 (6th Cir.1986) 12

Hunter v. Sprint Corp., 453 F.Supp.2d 44, 58-62 (D.D.C.2006) 6, 21

In re Texas EZpawn Fair Labor Standards Act Litigation, 2008 WL 2513682, at *7 (W.D. Tex. 2008) 9,14,21

Jacobsen v. Stop & Shop Supermarket Co., No. 02 Civ. 5915, 2003 WL 21136308, at *3 (S.D.N.Y. May 15, 2003) 11

Lynn's Food Stores v. U.S. Department of Labor, 679 F.2d 1350, 1352 (11th Cir. 1982) 19

Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1324 (1st Cir.1992) 7, 8

Monahan v. County of Chesterfield, 95 F.3d 1263, 1280 (4th Circ.1996) 18

Monahan, 2010 WL 724031 8, 9

Ozawa v. United States, 260 U.S. 178, 194 (1922) 20

Rainey v. Am. Forest & Paper Ass'n, 26 F.Supp.2d 82, 99-102 (D.D.C.1998) 6, 9

Roy v. County of Lexington, 141 F.3d 533, 548 (4th Cir.1998) 12

Russell v. Wells Fargo & Co., 672 F.Supp.2d 1008, 1011-12 (N.D.Cal.2009) 5, 6, 8

Sansom v. Apollo Res., Inc., 242 F.3d 629, 637 (5th Cir.2001) 11

Scott v. OTS Inc., 2006 WL 870369 6, 8

United States v. American Trucking Ass'ns., 310 U.S. 534, 543 (1940) 21

United States v. Campos-Serrano, 404 U.S. 293, 298, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971) 20

Urnikis-Negro v. American Family Property Services, 2010 WL 3024880 (7th Cir.2010) 2, 6, 7

Valerio v. Putnam Assoc. Inc., 173 F.3d 35, 40 (1st Cir.1999) 11, 12, 19, 20

Watt v. Western Nuclear, Inc., 462 U.S. 36, 56 (1983) 20

**State Cases**

Haynes v. Tru-Green Corp., 154 Ill.App.3d 967, 977, 107 Ill.Dec. 792, 798 (1987) 3

## INTRODUCTORY STATEMENT

By Order dated and entered April 8, 2010, [Docket No. 43] this MDL Court granted the motion of Plaintiff Piersanti for certification pursuant to Fed. R. Civ. P. 23 of a class consisting of approximately 483 current and former employees of AON during the period April 2003 to present, who were employed as Senior Client Specialists, Client Specialists and/or Associate Specialists in **AON's** Illinois Aon Client Services division, Client Services Unit ("CSU"); worked at least one hour of overtime and were not given overtime compensation in violation of Illinois Minimum Wage Law.

**It is undisputed that AON uniformly treated all Illinois Client Specialists (who were salaried employees) as exempt and never paid them any overtime compensation**. On the instant application, AON seeks an order granting it "partial summary judgment to dismiss Plaintiffs' requests for overtime damages calculated at one and one-half times the employees' regular hourly rate." Citing the authority of *Urnikis-Negro v. American Family Property Services*, 2010 WL 3024880 (7th Cir.2010) AON argues that "even if Aon erroneously classified any of the CSU or PMU specialist positions as exempt from the IMWL's or FLSA's overtime requirements, Plaintiffs' request to apply a 'time and one-half ' methodology of calculating overtime fails as a matter of law." AON further contends that the Fluctuating Work Week Methodology employing the "half-time" overtime calculation should be applied in accordance with *Urnikis-Negro.*

Plaintiffs cross-move for partial summary judgment, contending that the Fluctuating Work Week methodology of calculating overtime sought by AON, fails as a matter of law, and that all overtime back pay damages established at trial must be calculated at 1.5 times the employee's regular rate of pay. Plaintiffs further argue that *Urnikis-Negro* is clearly legally distinguishable from the instant litigation, and that both a textual analysis of 29 C.F.R. §778.114 and

considerations of public policy should result in a contrary decision by this Court, refusing to extend the clearly erroneous judicial rationale applied in *Urnikis-Negro.*

## ARGUMENT

For the purposes of this motion, plaintiffs acknowledge that the applicable provisions of the FLSA and of the Illinois Minimum Wage Law are coextensive and, therefore, if the methodology used to calculate unpaid overtime compensation complies with the FLSA, it also complies with Illinois law. The Illinois Administrative Code supports this proposition, see ILL.ADMIN.CODE Tit. 56, Sec. 200.170 (1991), as does Illinois case law. See *Haynes v. Tru-Green Corp.*, 154 Ill.App.3d 967, 977, 107 Ill.Dec. 792, 798 (1987). Accordingly, we frame our analysis in terms of whether the overtime calculations/methodology complies with the FLSA.

## POINT I
### AON HAS THE BURDEN OF PROOF ON THE FLUCTUATING WORK WEEK EXEMPTION

All FLSA exemptions are affirmative defenses on which the employer [AON] bears the burden of proving all statutory and regulatory elements. Moreover, the FLSA is a remedial statute and must be interpreted and applied as such. In view of the remedial purposes of the FLSA, it is well settled that the various statutory exemptions are to be *narrowly construed against the employer*. It follows that employers must show that employees fit "plainly and unmistakably" within an exemption's terms. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

The Fluctuating Work Week ("FWW") has itself been explicitly recognized as an exception to the normal rights of an employee under the FLSA placing a **"heightened burden"** of proving applicability squarely on AON. "We recognize that there is somewhat of a heightened burden placed on an employer utilizing the fluctuating workweek method of payment to demonstrate a "clear mutual understanding of the parties that the fixed

2

salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number...." *Monahan* 95 F.3d at 1275 n.12 (4th Cir. 1996); *see also Dingwall v. Friedman,* 3 F.Supp.2d 215, 221 (N.D.N.Y. 1998); *Burgess v. Catawba County,* 805 F.Supp. 341, 348 (W.D.N.C. 1992) ("since the "fluctuating workweek" is also an exception to the normal requirements of the FLSA, the Defendant bears the burden of establishing that it complied with the regulations").

It is against this backdrop that this Court should consider AON's application for imposition of the FWW exemption and AON's considerable burden, which cannot be sustained as a matter of law.

## POINT II
## THE FLUCTUATING WORK WEEK STANDARD

Under the Fluctuating Work Week ("FWW") method, "a successful plaintiff receives overtime compensation at only half his or her regular rate (instead of the usual one-and-a-half times his or her regular rate)." *Ackerman v. Coca-Cola Enters., Inc.,* 179 F.3d 1260, 1262-63 (10th Cir.1999) (citing 29 C.F.R. § 778.114). The plain terms of 29 C.F.R. § 778.114(c) provide that **unless:**

> all the legal prerequisites" for applying the flexible work week method are present, an employer cannot avail itself of the flexible work week method for calculating overtime wages. In such cases where the flexible work week method cannot apply, the "statutory" method of multiplying the employee's regular hourly rate by 1.5 and then by the number of     hours worked over 40 in each work week is the applicable overtime pay computation     method.

The FWW method applies if: (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed weekly salary that remains the same regardless of the number of hours worked during the week; (3) the fixed salary provides compensation at a regular rate that is not lower than minimum wage; (4) there is a clear, mutual understanding between the employer and the employee that the employer will pay a fixed weekly salary regardless of the number of hours

3

worked; and (5) the employee receives a fifty percent overtime premium in addition to his fixed weekly salary for all hours worked in excess of forty. *Flood v. New Hanover County,* 125 F.3d 249, 252 (4th Cir.1997) (citing § 778.114).

One of the prerequisites under 29 C.F.R. § 778.114(a) for applying the flexible work week method is payment of the mandatory 50% overtime premium contemporaneously with payment of the employee's regular straight time pay. *Russell v. Wells Fargo & Co.,* 672 F.Supp.2d 1008, 1011-12 (N.D.Cal.2009). Here, AON paid plaintiffs no wages at all for the hours for which plaintiffs seek recovery of unpaid overtime wages. AON therefore did not satisfy the contemporaneous overtime pay prerequisite of 29 C.F.R. § 778.114(a).

Another prerequisite for the flexible work week method of overtime calculation to apply is that the employer and employee must have reached a "clear mutual understanding" at the outset of their employment relationship that the employee's fixed salary would compensate the employee for all hours worked. *Griffin v. Wake County,* 142 F.3d 712 at 715. This understanding must include a meeting of the minds that the employee will be compensated for his/her overtime work at a rate of 50% of his regular hourly rate. *Russell v. Wells Fargo and Co.,* 672 F.Supp.2d 1008 at 1013-14.

In the instant litigation, the parties lacked the clear mutual understanding required by 29 C.F.R. § 778.114(a) as evidenced by the fact that Plaintiffs were paid nothing for the hours worked over 40 in various work weeks. If the employee receives no pay for overtime hours worked, the parties could not have understood that the employee was to be paid the requisite 50% overtime pay premium. Thus, **AON cannot avail itself of the FWW overtime pay computation method because two of the five prerequisites for application of that methodology are unsatisfied.**

## POINT III
## AUTHORITY CITED BY AON IS DISTINGUISHABLE AND FLAWED

The propriety of relying on section 778.114(a) and the FWW in cases where the employee

has been miscategorized by his/her employer as exempt from the FLSA's overtime provision has

divided the federal courts." *Urnikis-Negro v. Am. Fam. Prop. Servs.,* --- F.3d ----, 2010 WL

3024880, at *1 (7th Cir. Aug.4, 2010). *See, Russell v. Wells Fargo & Co.,* 672 F.Supp.2d 1008,

1013-14 (N.D.Cal.2009) (holding that the FWW cannot be used retrospectively in a

misclassification case); *Rainey v. American Forest & Paper Association,* wherein the court

analyzed section 778.114 and found that its requirements include a clear mutual understanding that

the employee is entitled to overtime compensation and contemporaneous payment of overtime

premiums. *Rainey,* 26 F.Supp.2d 82, 99-102 (D.D.C.1998); *see also Hunter v. Sprint Corp.,* 453

F.Supp.2d 44, 58-62 (D.D.C.2006) (discussing application of the FWW method in a

misclassification case). Other courts have rejected the use of the FWW method in

misclassification cases because there is no contemporaneous payment of overtime compensation

in such cases. *See, e.g., Cowan v. Treetop Enters.,* 163 F.Supp.2d 930, 941 (M.D.Tenn.2001)

(citing *Rainey* ); *\*1016 Scott v. OTS Inc.,* 2006 WL 870369, *12 (N.D.Ga.) (citing *Rainey* ).

Compare *Desmond v. PNGI Charles Town Gaming, LLC,* 661 F.Supp.2d 573, 579-85

(N.D.W.Va.2009) (applying the FWW method in a case where the employer misclassified its

employees as exempt).

The Seventh Circuit recently faced the issue in *Urnikis-Negro.* 2010 WL 3024880, at *7-

18. The court agreed with cases such as *Russell* that the requirements of § 78.114(a) are <u>not</u>

satisfied in a misclassification case. *Id.* at *14. However, the court disagreed with the ultimate

holding in those cases that the FWW method has no applicability in a misclassification case,

ruling instead that the conclusion that §778.114(a) "itself is inapplicable does not compel the

conclusion that reliance on the FWW method of calculating [an employee's] regular rate [is]

erroneous." *Id.* at *14.

　　We submit that the *Urnikis* holding should not have broad sweeping applicability to all misclassification cases. *Urnikis* is a radical change in the law, but its holding is restricted to its unique facts and circumstances. It reflects an extremely narrow, ambiguous and conflict ridden determination, based upon the questionable factual determinations and rulings made by the trial court, which on appeal were found to be *not clearly erroneous*. Simply stated, whether or not the Circuit Court agreed with those factual findings and/or rulings, and regardless of its academic struggle, it could not find sufficient support in the record to hold that the decision of the trial court was *clearly erroneous*. In that regard, the appellate court noted that the evidence "was mixed as to the number of hours [the plaintiff's] fixed weekly salary was meant to compensate." *Id.* at *15. Acting as the ***fact finder*** at a bench trial, the district court found that "although [the plaintiff] likely thought she would be working 40-hour weeks, 'her understanding was that her salary was to cover whatever time she was called upon to work in a given week.'" Id. Thus, the district court determined that the plaintiff and the defendant "had a 'clear mutual understanding' that her weekly salary of $1,000 was meant to compensate her for however many hours she worked, not 40 or some other number." *Id.* Based upon the foregoing, the Seventh Circuit concluded that the district court's finding was *not clearly erroneous*, and, therefore, application of the FWW method was appropriate. *Id.* The court explained:

> Given this finding, it is Missel which dictates how the regular rate of pay must be calculated here. See Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1324 (1st Cir.1992) ("[Missel's] outcome is binding on us and the district judge.)" Id.

*Urnikis* thus stands for the problematic and conflicting legal propositions that where an agreement has been reached wherein fixed weekly salary will constitute payment at the regular rate for any and all hours worked, "the employer in this scenario, and perhaps the employee as well, have failed to recognize the employee's entitlement to a premium for overtime hours. In that

respect, the agreement runs afoul of the FLSA." *Id.* However, on the other hand, *Urnikis* holds "But that breach of the statute does not alter the employee's regular rate of pay, which under *Missel* turns on what the parties agreed the employee would be paid for the hours he actually worked (so long as the rate is not lower than the minimum wage). The overtime premium can and will be awarded by the court retroactively." *Id.*

      *Missel* was decided **before** the Department of Labor issued it regulations on the FWW. While the Supreme Court may have determined that an employment contact similar to a modern-day FWW plan was deficient because it did not require a limit on the hours the employee could have been required to work for the agreed wage, the Court in *Missel* was not discussing a FWW plan as regulated by the Department of Labor's regulations, with the other protections to the worker the FWW affords.

      The *Urnikis* court clearly and unequivocally agreed with cases from district courts in other circuits that the requirements of §778.114(a) are **<u>not</u>** satisfied in a misclassification case, such as the instant litigation:

> Section 778.114(a) is thus a dubious source of authority for calculating a misclassified employee's damages in the way that the district court did here. A number of district courts, noting that the rule's requirements invariably have not been satisfied in employee-misclassification cases, have thus rejected reliance on the rule in calculating an employee's regular rate of pay. See *Monahan*, 2010 WL 724031, at *7-*9; *Brown v. Nipper AutoParts & Supplies, Inc.,* 2009 WL 1437836, at *6-*7; Russell, 672 F.Supp.2d 1008; Texas EZPawn, 633 F.Supp.2d at 400-06; Scott, 2006 WL 870369, at *11-*13; *Cowan*, 163 F.Supp.2d at 940-42; *Rainey*, 26 F.Supp.2d at 100-02. *We find the reasoning of these cases to be persuasive.* (emphasis added).

      The Seventh Circuit also acknowledged that a number of courts that have deemed section 778.114 inapplicable have reasoned that if the requirements of the rule are not met, "one should presume that an employee's fixed weekly salary was meant to compensate him solely for 40 hours of work even when he regularly worked more than 40 hours without any expectation of additional pay." Id. (Citing, *Monahan v. Emerald Performance Materials, LLC.*, 2010 WL 724031, at *8;

*Texas EZPawn Fair Labors Standards Act Litigation*, 633 F.Supp.2d 395 at 397, 404-05; Rainey, 26 F.Supp.2d at 85, 102). Plaintiffs, herein, submit that this judicial rationale should be applied in the case at bar. "Employing that presumption would lead to the conclusion that the employee has received no pay at all for his overtime (i.e., neither straight-time pay nor an overtime premium) and is thus entitled to one and one-half his regular rate of pay for all overtime hours. It would also boost his regular rate of pay, as his fixed weekly wage would be divided by 40 rather than the (higher) total number of hours he worked during the week. *Texas EZPawn*, 633 F.Supp.2d at 404."

However, the *Urnikis* Circuit Court did not decide the propriety and application of this presumption. It merely observed that the presumption was not "irrebuttable;" that the employee's regular rate of pay is a factual matter, ( *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. at 424-25) and where the employer and the employee have, in fact, agreed that a fixed weekly salary will constitute payment at the regular rate for any and all hours worked-which *Missel* recognizes they are free to do, "there is no factual basis for deeming the salary to constitute straight-time compensation for 40 hours alone." *Id.*

The present case before this Court can be distinguished, by reason of the fact that the evidence establishes that there never was a clear mutual understanding between AON and plaintiffs/members of the class that their weekly salary was meant to compensate them for however many hours they worked.

### POINT IV
### THE PARTIES LACK THE CLEAR MUTUAL
### UNDERSTANDING REQUIRED BY *MISSEL*

It is well established in the law that 29 C.F.R. § 778.114 places the burden on the employer to prove the 'clear mutual understanding' since the section otherwise acts as an exemption to the strict overtime requirements of FLSA. *Monahan*, 95 F.3d at 1281.

The structural framework of the FLSA and the DOL regulations undercuts AON's claim

that it had a "clear mutual understanding" with the plaintiffs. AON has maintained consistently that during the statutory period Client Specialists, of all levels, were employed in an administrative capacity that rendered them exempt from §207(a) of the Act. If Plaintiffs and members of the class were in fact exempt, they clearly would not be entitled to any overtime compensation, no matter how computed, as the provisions for overtime compensation apply only to employees not exempt from §207(a). Yet, AON insists that all along it had a clear mutual understanding with plaintiffs and members of the class; one defined by the regulations as encompassing an understanding **that overtime premiums would be paid**. *See* 29 C.F.R. § 778.114(a) ("a clear mutual understanding ... that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek ...") (parentheses in original). The "clear mutual understanding" language contained in 29 C.F.R. § 778.114(a) suggests employee consent is required before the payment scheme is allowed. "Mutuality" is a two-way street, and cannot exist without some participation by the employee. Where an employee is misclassified, it is impossible for there to be the requisite mutuality, as the issue of the structure of the employee's pay vis-a-vis the overtime laws would never have been a topic of conversation. **AON cannot credibly argue both sides of the same coin.** Therefore, as a matter of law, no clear mutual understanding existed between the parties, precluding AON from a summary judgment regarding calculation of damages.

## A.     Proof of Clear Understanding

Here, the fact that Plaintiffs and members of the Class regularly worked more than 40 hours per week does not, without more, indicate that their weekly salary was intended to include the FLSA overtime premium for all hours in excess of 40. *See Adams, et al. v. Dep't of Juvenile Justice, et al.,* 143 F.3d 61, 67 (2d Cir.1998) (noting, in addressing the regular hourly rate for Houseparents working 60 to 120 hours per week, that case "authorities do not resolve whether the

salary of an employee who regularly works more than forty hours per week should or should not be presumed to include an overtime premium").

There is a **rebuttable presumption** that a weekly salary covers 40 hours; the employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours." *Giles v. City of New York,*, 41 F.Supp.2d at 308,317 (S.D.N.Y. 1999); *see, also Jacobsen v. Stop & Shop Supermarket Co.,* No. 02 Civ. 5915, 2003 WL 21136308, at *3 (S.D.N.Y. May 15, 2003) ("If an employer seeks to pay a non-exempt employee a weekly salary that includes a premium overtime component calculated at time and one half of an hourly rate, there must be an express agreement to such an arrangement.").  Thus, "[u]nless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours." *Giles,* 41 F.Supp.2d at 317.

Proof of clear understanding does not require a showing beyond the words in the statute, hence, "Section 778.114 does not require that the employee know the hours expected to be worked, that the fixed salary is not be paid for weeks where the employee performs no work, or any other details of how the [fluctuating workweek] is administered." *Sansom v. Apollo Res., Inc.,* 242 F.3d 629, 637 (5th Cir.2001); *see also Valerio v. Putnam Assoc. Inc.,* 173 F.3d 35, 40 (1st Cir.1999) (stating that "the regulation calls for no such enlarged understanding" such as how overtime premiums are calculated).  However, securing such acknowledgments is certainly probative of the employees' clear understanding of the fluctuating workweek plan.  *See Highlander v. K.F.C. Nat'l Management Co.,* 805 F.2d 644, 648 (6th Cir.1986) (finding clear mutual understanding when employee signed form explaining calculation of overtime under the fluctuating workweek method); *cf. Condo,* 1 F.3d at 602 n. 4 (noting importance of the fact that

10

employment contract contained chart illustrating method of overtime pay).

It has been held that where a company's policies, practices and procedures provide a seemingly reasonable explanation of the flexible workweek plan to its employee, a clear understanding requirement of the FLSA is met. For example, in *Griffin,* the Court of Appeals for the Fourth Circuit held that introduction of the plan at mandatory employee meetings, where explanatory memorandums were distributed and signatures were secured, proved to be probative of employees' clear understanding of the plan. Id, 142 F.3d at 716. In *Dingwall v. Friedman Fisher Associates, P.C.*3 F.Supp.2d 215 (N.D.N.Y., 1998), a case that is instructive, the Court held that information in the Employee Manuals defeated a finding of clear and mutual understanding between the parties:

> [D]efendant has failed to establish this requirement. There is no evidence in the record that plaintiff clearly understood that his salary was intended to compensate him for any hours worked. To the contrary, the employee manuals distributed at various times during plaintiff's employment all state that states that "[s]taff personnel are normally expected to work a 40 hour week with the exception of preestablished holidays. Id

Other examples of evidence offered to prove clear understanding are an employers' testimony of oral notification to employees of their fluctuating workweek plan as well as personnel forms, employee handbooks and memorandums containing information about their fluctuating workweek plan. *Roy v. County of Lexington,* 141 F.3d 533, 548 (4th Cir.1998). The court further held that paychecks provided a regular lesson to the employees on how the fluctuating workweek plan worked. Id. at 717; *see also Valeri v. Putnam Assoc. Inc.,* 173 F.3d 35 at 39 (stating that the parties' post-hiring conduct, namely plaintiff's continued employment without complaint about her pay, is a probative factor in proving the clear understanding requirement). **None of these evidentiary indicia are present in the instant litigation**. This is particularly true because plaintiffs and members of the class never work less than 37.5 hours per week and AON never issued paychecks containing overtime compensation to plaintiffs or

members of the class, which would have assisted Client Specialists in understanding the hours expected to be worked; that the fixed salary is paid for weeks where the employee performs no work, or any other details of how a fluctuating workweek is administered.

Where, as here, the understanding of an employer and an employee about overtime compensation is based upon a false premise that the employee is *exempt* from FLSA coverage, it does not automatically follow, as AON argues, that the parties mutually understood that the fixed weekly salary constituted "straight time pay for whatever hours [the employee] is called upon to work in a workweek, *whether few or many [,]* ... rather than for working 40 hours or some other fixed weekly work period." *See* 29 C.F.R. §778.114(a). It is true, of course, that an employee who is told he is exempt from FLSA coverage (i.e., that he is not legally entitled to collect overtime) will understand that he will not receive any additional compensation beyond the agreed-upon salary if he works *more* than forty hours in a particular week, but that does not necessarily translate into the kind of understanding contemplated by the Fluctuating Work Week cases and regulations.

**B.     The Evidence Demonstrates That Plaintiffs and Members of**
**The Class Received a Flat Salary**

The parties disagree over how overtime hours should be computed. The dispute hinges upon what Plaintiffs' salary paid for. Three types of salary described in Department of Labor regulations are relevant here: "flat salary," "fluctuating workweek," and "variable workweek." Employees receive a fixed salary under all three methods. Flat-salary employees' salary is for a regular number of hours per workweek; fluctuating workweek employees' salary is for a fluctuating number of hours per work week; and variable workweek employees' salary is for a variable number of hours up to an agreed number of hours per week. 29 C.F.R. §§ 778.113, 778.114, 778.306(b), 778.323, 778.325. Flat-salary and variable workweek employees' salary is compensation only for the regular number of hours per workweek, and thus is not compensation

12

for any additional hours of overtime. §§ 778.113, 778.323. Accordingly, flat-salary and variable workweek employees are entitled, in addition to their salary, to full time-and-a-half compensation for any overtime hours. §§ 778.113, 778.323, 778.325.

By contrast, fluctuating workweek employees' salary is by definition "straight time" compensation for whatever hours the employee is called upon to work during the workweek, no matter whether great or few. §778.114(a). Thus, in addition to their salary, fluctuating workweek employees are entitled only to "half-time" for any overtime, *id.,* rather than the time-and-a-half to which flat-salary and variable workweek employees are entitled. As relevant here, the essence of the flat-salary and variable workweek methods is that salaries pay for straight time only for an agreed-upon, constant number of hours each week, §778.113, or only for all hours up to an agreed-upon, constant number of hours each week, §§778.306(b), 778.323, 778.325. By contrast, the essence of the fluctuating workweek method is not merely that employees work a fluctuating number of hours, but rather that their salary is straight time pay for *all* hours worked, no matter whether great or few. §778.114(a). The flexible workweek method results in overtime compensation 375% lower than the traditional method. *In re Texas EZPawn Fair Labor Standards Act Litigation,* 633 F.Supp.2d 395 (W.D.Tex.2008). "The mathematics of this payment structure means 'the more the employee works and the more overtime the employee logs, the less he or she is paid for each additional hour of overtime." *Davis v. Friendly Express, Inc.,* 2003 WL 21488682, at *1 (11th Cir.2003).

In this case, the evidence demonstrates that plaintiffs and members of the class were expected to work a minimum of 37.5 hours every week, unless they utilized earned leave, and that they were typically assigned to definitive shifts; i.e., of 7:00 a.m. to 3:30 p.m, which included a half-hour *unpaid* lunch break, five days a week. (Exhibit "N" Copies of the cited·portions from the Deposition of Elizabeth Raupp ("Raupp Dep". 211:13 -212: 13) annexed to Plaintiffs' Rule

13

56.1 Statement of Facts)(concededly Plaintiffs' were required to work 37.5 hours).

AON's Employee Handbook describes hours of work, lunch and breaks, as follows:

The Company has established its office hours to best serve its clients. You are normally provided paid break time and an **unpaid lunch period** during your **regular workday**. Your supervisor will inform you of the office hours, lunch and break periods designated for     your location."

(Exhibit "E" annexed to Plaintiffs Rule 56.1 Statement of Facts [bates stamped document AON-NY 000145]).

The Employee Handbook further requires that "Variation in work loads or other situations may require overtime. All employees are expected to cooperate by working when requested, except in circumstances where unusual hardship would result." (Exhibit "E"). This term and condition applies to both non-exempt and exempt employees. Nothing of legal substance is added by the repetition of this generic statement that "[d]ue to the nature and scope of exempt positions, a certain amount of work beyond the normal workweek is expected in situations where business demands require it." (Exhibit "E").

The use of the term "**normal workweek**" clearly establishes that exempt Client Specialists had the expectation of 37.5 standard fixed hours of employment on defined hourly shifts, as part of the terms and conditions of employment with AON. The language in the Employee Handbook is vague, overbroad and misleading. It suggests that from time to time, additional hours **migh**t be required, without quantification of frequency or a definition of "where business demands require it." The language does not remotely infer that Client Specialists would be working over 50 hours per week on a regular frequency, as the evidence has disclosed. "Standard workweek" is inconsistent with and the diametric opposite of the scenario proposed by AON on this motion, wherein there is no designated and fixed work shift with finite hours of work and the employee commences and finishes work each day at different times, with a clear understanding that salary received and accepted covers *all the hours they worked*.

The testimony of Kim Franklin, an AON Senior Client Specialist clearly illustrates that a

14

mutual and clear understanding as to work hours and what time the salary actually was intended to

cover was **never** reached:

> Q.      Did you understand that when you were hired in Chicago that if you received a
> salary you would have to work as many hours as necessary to perform your job duties
> and responsibilities?
> A.      I don't think anyone said that exactly.
> Q.      Was that your understanding?
> A.      Well, in some respects.
> Q.      In what respects was that your understanding?
> A.      I guess if—we were given a certain amount of work to do within a certain amount
> of time so—and we were given a quantity of work to complete within a certain amount of
> time so that was the goal.
> Q.      And if you couldn't complete it in that amount of time, what was your
> understanding?
> A.      It would be kind of counted against you as far as I guess when you are reviewed.
> Q.      So what did you do personally when you got a task to do and you couldn't
> complete          it within the time parameters? What did you personally do?
> A.      You worked a little over.
> Q.      Until it's completed, correct?
> A.      Uh-huh.

(Exhibit "Q" copies of the cited portions from the Deposition of Kim Franklin ("Franklin Dep".
12:8-13:8) annexed to Plaintiffs' Rule 56.1 Statement of Facts .

> Declarations of current Client Specialists, **submitted by AON** in opposition to Plaintiffs'

motion for conditional class certification are also instructive:

> I am required to work 7.5 hours each day, but I do not need to check in with anyone
> before I leave for the day."

(Exhibit "F" Declaration of Nick Sellers annexed to Plaintiffs' Rule 56.1 Statement of Facts [bates

stamped AON-NY 001664-1665]).

> I work an early shift, starting at 7a.m. and ending at 3:30. I work the earliest shift. My
> team is staggered to arrive and leave at later shifts throughout the day."

(Exhibit "G" Declaration of Vasilija Stanojevic annexed to Plaintiffs' Rule 56.1 Statement of Facts

[bates stamped AON-NY 001672-1675]).

> I work from 7:00 a.m. to 3:30 p.m. Depending on the amount of work I need to get done, I
> sometimes come into work early or late."

(Exhibit "H" Declaration of Anna Gravesen annexed to Plaintiffs' Rule 56.1 Statement of Facts

[bates stamped AON-NY 001619-1620]).

> My work shift starts at 8:00 a, m. and ends at 4:30.My team is staggered to arrive and
> leave at later shifts throughout the day. Five times per quarter, I am required to work the
> "late shift," which is 10:30 a.m. to 7:00 p.m. to accommodate our West Coast Clients.
> My supervisor is flexible regarding my need for time off, such that I can attend doctor's

appointments, etc."

(Exhibit "I" Declaration of Raymond Magiera annexed to Plaintiffs' Rule 56.1 Statement of Facts [bates stamped AON-NY 001637-1639]).

We submit that AON's description of a "normal work week" and the regularity of such shift work is hardly consistent with a fluctuating work week. Moreover, AON's own internal classifications of Client Specialists as working 37.5 standard hours per week, strongly refutes AON's arguments. In that regard, on AON's Transfer/Job Reclassification Form for Plaintiff, Denise Miller, in connection with her transfer from NY CSU to AON's Glenview, Illinois office, AON Human Resources classified Ms. Miller as an employee working 37.5 standard hours per week. (Exhibit "J" annexed to Plaintiffs' Rule 56.1 Statement of Facts [bates stamped document AON – NY 001368)]. The same 37.5 standard hours per week were described by AON HR in Plaintiff Joyce Coopers papers in connection with her transfer to Illinois CSU from AON's Houston office. (Exhibit "K" annexed to Plaintiffs' Rule 56.1 Statement of Facts [AON-NY 002399]).

## POINT V
### *URNIKUS* IS PLAINLY AT VARIANCE WITH THE LEGISLATIVE POLICY OF THE FLSA AS A WHOLE

The principal congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours. . . . In contrast to the Labor Management Relations Act, which was designed to minimize industrial strife and to improve working conditions by encouraging employees to promote their interests collectively, the FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive 'a fair day's pay for a fair day's work' and would be protected from the evil of overwork as well as underpay."

*Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U. S. at 739 (1981).

The Supreme Court has recognized that the FLSA "was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." *A.H. Phillips, Inc., v. Walling,* 324 U.S. 490, 493

(1945) (quoting Message of the President to Congress, May 24, 1934). Consequently, "[any exemption from such humanitarian and remedial legislation must therefore be narrowly construed," because "[[to] extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." *Id.*

We submit that the holding in *Urnikus* has produced a result at odds with the purposes underlying the FLSA in a way that will negate Congress' overriding legislative objectives. It is the first case holding that notwithstanding the fact that the requirements of §778.114(a) are <u>not</u> satisfied in a misclassification case, it is permissible for a Court to rely on the FWW method to retroactively calculate an employee's regular rate of pay, after the employer has been determined to have violated the FLSA. The potentially disastrous financial implications to employees, resulting from the *Urnikus* decision, are summarized below.

The FWW is an alternative to the traditional FLSA methodology of calculating overtime compensation. Under FWW it is far less expensive for an employer to work a small number of employees for long hours, than to hire new employees. Ostensibly, under FWW, because of the fixed salary paid for all hours worked each week, the employee is paid one half (½) his/her regular rate for every hour worked over 40, instead of 1.5 times regular rate. This significantly lessens the financial impact on employers, but "the more the employee works and the more overtime the employee logs, the less he or she is paid for each additional hour of overtime." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1280 (4th Circ.1996)

By utilizing FWW and paying a small number of employees to work overtime helps ensure that sales outpace labor costs, rewarding the employer and undermining the purposes of the FLSA. The result is that "[a]lmost one in five [American] workers is required to work paid

or unpaid overtime once or more a week with little or no notice."[1]  In addition, "Nearly one in

three [American] workers regularly works more than forty hours a week while one in five

workers clocks over fifty hours a week."[2]  Moreover, the number of "American workers who

work fifty hours or more per week is among the highest in the industrialized world."[3]

In *Lynn's Food Stores v. U.S. Department of Labor,* the Eleventh Circuit noted that

"Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to

negotiation or bargaining between employers and employees." 679 F.2d 1350, 1352 (11th Cir.

1982).  It concluded that "FLSA rights cannot be abridged by contract or otherwise waived

because this would 'nullify the purposes' of the statute and thwart the legislative policies it was

designed to effectuate." (Citing *Barrentine, 450* U.S. 728 [1981]).

A major problem in applying the FWW in misclassification cases is that it requires the

employee to waive his/her rights under the FLSA.  For example, both *Valerio* (upon which

the *Urnikis* District Court relied) and a Tenth Circuit case, *Clements v. Serco,* read the

mutual understanding requirement as being a mutual understanding that the employee will

be paid a fixed salary regardless of the hours worked *without consideration of overtime*

*premiums. See, Valero, supra,* 173 F.3d 35, 40 (1st Cir. 1999); *Clements,* 530 F.3d 1224,

1231 (10th Cir. 2008).  To reach this conclusion these cases find that because the employee

believed himself to be exempt, he was not expecting to get overtime premiums at *all* and

therefore the words "apart from overtime premiums" are superfluous. In fact, *Valero*

specifically notes that "because the parties initially agreed that she [Valero] would not receive

---

[1]  Shirley Lung, *Overwork and Overtime,* 39 Ind. L. Rev. 51, 65 (2005) at 52 (citing James T. Bond Et Al., Families & Work Inst., The 1997 National Study of the Changing Workforce: Executive Summary 9 (1998).
[2]  Id. (Citing Lonnie Golden & Helene Jorgensen, Econ. Policy Inst., *Time After Time: Mandatory Overtime in the U.S. Economy* (2002).
[3]  Id. (Citing Jerry A. Jacobs & Kathleen Gerson, *Who Are the Overworked Americans,* 56 Rev. Soc. Econ. 442, 449-50 (1998))

any additional payments for overtime hours, no agreement regarding calculation of overtime existed." *Valero,* 173 F.3d at 408. This describes the precise situation that exists in the instant litigation. Plaintiffs and members of the class were hired with full knowledge that they were classified by AON as exempt and would not receive overtime compensation. AON's Offer of Employment to Client Specialists is silent as to whether the salary received is intended to cover all hours worked. In Plaintiff PIERSANTI's case, the offer merely recites that "Your position at Aon Risk services as an exempt Associate Client Specialist, reporting to Denise Harvey, in Glenview, Illinois at an annual salary of $39,000 paid on a semi-monthly basis." (Exhibit "J" annexed to Plaintiffs' Response to AON's Rule 56.1 Statement of Facts [AON-IL 000926-927]). This is a direct waiver (and a prospective one at that) of the employee's right to receive overtime under the FLSA.

In construing a congressional act, the relevant intent of Congress is that existing at the time the statute was enacted. See *Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 611, and n. 8 (1978). It is blackletter law that Courts must interpret the statute in the way that is most consistent with Congress' broader purpose. A result, such as *Urnikis*, which is "plainly at variance with the policy of the legislation as a whole," *Ozawa v. United States,* 260 U.S. 178, 194 (1922), cannot be correct. *Watt v. Western Nuclear, Inc.,* 462 U.S. 36, 56 (1983) (statute should not be interpreted "to produce a result at odds with the purposes underlying the statute" but rather "in a way that will further Congress' overriding objective"); 2A Sands, *supra,* § 46.07; see also; *United States v. Campos-Serrano,* 404 U.S. 293, 298, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971). Courts should avoid an "unreasonable [result] 'plainly at variance with the policy of the legislation as a whole.' " *United States v. American Trucking Ass'ns.,* 310 U.S. 534, 543 (1940).

Public policy considerations militate against permitting an employer caught misclassifying an employee, to fall back upon the FWW as a remedial measure. To do so "creates incentives at

odds with the express statement of Congressional intent [of the FLSA]." *In re Texas EZpawn Fair Labor Standards Act Litigation,* 2008 WL 2513682, at *7 (W.D. Tex. 2008).

Here, AON erroneously classified plaintiffs and members of the class as exempt and overtime compensation was not provided contemporaneously. AON should not be permitted to retroactively satisfy FLSA overtime requirements, if it is found to violate section 207, by claiming that it had intended to pay overtime. Such an after-the-fact provision of overtime compensation was rejected by the Supreme Court in *Missel*, (rejecting the employer's attempt to use FWW method where there was "no provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage). 316 U.S. at 581. Indeed, if the FWW methodology proposed by AON is applied in the manner determined by the Court in *Urnikis* , employers such as AON, would have a substantial incentive to err on the side of classifying employees as FLSA-exempt whenever the functions performed are at the margins of an exemption-rather than to specifically negotiate an overtime compensation arrangement with the employee at the outset-because the financial risk associated with misclassification (halt-time pay for overtime) would be relatively small if retroactive calculation were routinely available. *Hunter*, 453 F.Supp.2d at 62, n. 19.

With due deference to the Seventh Circuit and this Court, Plaintiffs and the class believe that the conclusion reached in *Urnikis* is fundamentally flawed. Although the argument has been made by AON that this Court should follow a Seventh Circuit precedent with which it simply disagrees, there is more here than that. In this case, as described above, the evidence does not support a finding, as a matter of law, of a clear mutual understanding as to what hours the parties agreed that salary would cover each week. More significantly, the decision in *Urnikis* is wholly inconsistent with the FLSA, and cannot be reconciled with the purposes of the Act. With respect, Plaintiffs request that this Court decline to follow that decision and urge the Circuit Court to

20

revisit the issues raised in *Urnikis*.

## IN CONCLUSION,

By reason of all of the foregoing, the determination by the Seventh Circuit in *Urnikis* is contrary to the Congressional intent and at odds with the purposes underlying the FLSA. Thus, it is invalid. As a matter of law, then, the FWW method of calculating overtime pay is not applicable to Plaintiffs' claims and AON's motion must be denied. Plaintiffs' cross-motion for summary judgment, based upon the particular facts herein, should be granted and all overtime back pay damages established at trial should be calculated at 1.5 times the employee's regular rate of pay, based on a 40 hour week.

Dated: New York, New York
      October 21, 2010

Respectfully submitted,

PLAINTIFFS PIERSANTI, MILLER,
HOLMES, CRAIG, CAESAR AND
COOPER

By:   /s/ Steven Bennett Blau
One of Their Attorneys
Steven Bennett Blau
Shelly A. Leonard
Blau, Brown & Leonard LLC
224 West 30th Street, Suite 809
New York, NY 10001
212-725-7272
212-488-4848 (fax)

John W. Billhorn
Billhorn Law Firm
120 South State Street, Suite 400
Chicago, IL 60603
*Attorneys for Plaintiffs*